BARNETTE, Judge.
On November 23, 1962, plaintiff corporation brought its original petition for an injunction prohibiting defendant labor union and the individual defendants, officers, agents, and members of the union from picketing, demonstrating, or engaging in other activities designed to block the entrances to plaintiff’s plant and to harass those attempting to enter.
On December 17, 1962, the Twenty-Fourth Judicial District Court, Parish of Jefferson, decreed a permanent injunction containing the following prohibitions:
“1. Obstructing, or attempting to obstruct, the free use of the public or private roadways leading into and out of petitioner’s plant and property; congregating in, at or near the entrances of petitioner’s plant or property in such numbers and in such a manner as to physically block, obstruct or attempt to obstruct individuals on foot or in vehicles attempting to enter or leave petitioner’s plant or property;
“2. Intimidating, threatening, or otherwise molesting petitioner’s employees, agents, representatives, customers or persons doing business with petitioner and lawfully entitled to enter or leave petitioner’s place of business, plant or property.”
In December, 1963, defendants brought a rule to show cause why the injunction should not be dissolved. After several continuances of the hearing on the rule, plaintiff filed an exception of no cause of action based on two premises. The first argument was that since the time for appeal from the original decree had passed when defendants brought their rule, the judgment was final, and the trial court was without procedural capacity to dissolve it. The second argument was alternative — that, even if the court had procedural capacity to hear the rule and dissolve the injunction, the defendants had no legal right to engage in the activities enjoined and hence had no basis for seeking a rescission. They had not alleged any facts which as a matter of law would entitle them to a dissolution of the injunction.
The trial court upheld the exception and dismissed the defendants’ motion apparently based upon the first premise. Orally assigned reasons for the judgment (transcribed and entered in the record) indicate that the trial judge regarded the decree and any proposed modification thereof as being beyond his jurisdiction in that the injunction was a final judgment. There was no specific ruling on the second premise, and determination of the merits of 'the motion was never reached.
The case presents two questions upon which its outcome will turn. First, did the district court have procedural capacity or jurisdiction to consider a motion for a rule to show cause why the permanent injunction should not be dissolved after the judgment became final? For the reasons discussed later herein, we hold that it did. An affirmative answer to the first question gives rise to the second. Can there be any reason shown why a court should modify or dissolve a narrowly drawn injunction which prohibits only acts which are illegal otherwise and in which the parties enjoined have no inherent right to engage? For the reasons assigned below, we hold that there can be reason in proper situations to dissolve such an injunction.
At the outset we feel it is necessary to make clear that a decision in this case can be reached only be keeping in mind the nature of an equitable injunctive decree.
“ * * * it ¿oes not create a right, but merely protects the rights of the *812 complainant from unlawful and injurious interference. The complainant does not thereby acquire a perpetual or vested right in the remedy, or in the law governing the injunction, or in the effect of the injunction. Nor is he entitled to the same measure of protection at all times and under all circumstances; the injunction order or decree is an ambulatory one and marches along with time, affected by the nature of the proceeding. This is true, at least, with respect to an order or decree of injunction directed to events to come. It is executory and continuing as to the purpose and object to be attained, and is always subject to adaptation as events may shape the need. * * * ” 28 Am.Jur. Injunctions, § 306 (1959).
A court of equity, as was the district court in this proceeding, retains the power to alter or rescind its decrees. So long as the injunction remains in force, it extends the life of the proceeding in which it was granted and the jurisdiction over the terms of the decree remains in the court which issued it. 28 Am.Jur. Injunctions, § 316 (1959). Associate Justice Benjamin Cardozo of the United States Supreme Court, one of the most eminent jurists of this century, considered the power of a court to modify a decree and said:
“We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions * * * Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. * * * ” United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999, 1005 (1932).
The only reported case in Louisiana jurisprudence which discusses the modification of a permanent injunction is Roemer v. General Truck Drivers, 111 So.2d 348 (La.App. Orleans 1959). In it the defendant union, on appeal, sought a modification of the injunction as an alternative to an appeal for complete revocation, alleging changed conditions. The court rejected the argument that conditions had changed, and then pointed out that defendant’s proper remedy would be to institute in the lower court a rule to show cause why the injunction should not be modified. Thus, the procedure employed in the instant case was precisely that recommended to the enjoined union in the Roemer case. An examination of the subsequent record in that case reveals that such a rule was later filed by the defendant in the trial court, and the injunction was modified. Roemer v. General Truck Drivers, No. 320-390, Civil District Court, Parish of Orleans, Dec. 19, 1961.
No one can deny the court’s inherent power to enforce its injunctive decrees. This authority is not alone dependent upon LSA-C.C.P. art. 3611 which deals with disobedience of, or resistance to, temporary restraining orders, preliminary and final injunctions. We think the power also to modify its decree as conditions warrant, even to the extent of revocation, is equally inherent and logically included in the authority of enforcement. The source of this authority does not lie in specific statutory law. The principle upon which injunctive jurisdiction is founded is one of equity, the basic element of which is protection against irreparable damage or injury, and it is resorted to when there is no adequate remedy at law. By the same principle, if the party enjoined is caused to suffer an irreparable injury or damage by the continued enforcement of the injunctive decree when on account of changed circumstances it has served its intended purpose and is no longer needed, he should in all fairness have recourse to the very court which has enjoined him, and in the same proceeding.
*813 Plaintiffs, respondents in rule, rely in their argument against the foregoing principles on the articles of the Louisiana Code of Civil Procedure, particularly Articles 1951 and 3607. By reference to these articles, which are silent on the subject of modification of permanent injunctions, they arrive at the conclusion that there is no law to authorize modification or revocation of a permanent or final injunctive decree. This argument leads ultimately to an absurdity. Is an injunction to go on forever, once the time for appeal has passed, regardless of its need, or change of conditions, or irreparable injury which in time might result from its literal enforcement ? We think not. For every right there must he a remedy, and the remedy here is found in the same authority which ordered the injunction in the first place. The fact that the legislature has not expressly enacted a law to regulate the administration of this process of equity, should not deny the right to the process by appropriate means.
We do not think the legislature in adopting the Code of Civil Procedure, and particularly Article 3607, intended thereby to imply that the right to dissolve or modify a permanent injunction does not exist. Article 3607 is limited and designed to accomplish a specific thing, namely to protect persons against harsh decrees without a full trial of all issues. It provides as follows :
“An interested person may move for the dissolution or modification of a temporary restraining order or preliminary injunction, upon two days’ notice to the adverse party, or such shorter notice as the court may prescribe. The court shall proceed to hear and determine the motion as expeditiously as the ends of justice may require.
“The court, on its own motion and upon notice to all parties and after hearing, may dissolve or modify a temporary restraining order or preliminary injunction.’’ (Emphasis added.)
Bearing in mind that temporary restraining orders and preliminary injunctions are granted without a full hearing of all evidence, they being devices for immediate relief, the article is designed to protect a party against whom this immediate order is directed improvidently. Note the “two days’ notice” or “shorter” if the court thinks necessary. Note also the mandate for expeditious hearing and determination, and the authority of the court ex proprio motu. The reason for exclusion of permanent injunctions from this article is therefore obvious. They are not granted until after a full trial and hearing of all evidence.
Furthermore, if the legislature had by implication intended to deny to persons enjoined the relief here sought, as argued by plaintiffs, it is doubtful that such intent would be given effect in view of the jurisprudence of this State as set out in Godchaux Sugars v. Chaisson, 227 La. 146, 78 So.2d 673 (1955), wherein the Supreme Court, through Fournet, C. J., said:
“In the Douglas Public Service Corp. case [Douglas Public Service Corp. v. Gaspard, 225 La. 972, 74 So.2d 182 (1954)] we held that the legislative statutes prescribing procedural rules for obtaining needful writs- and processes would be upheld so long as they did not violate our basic law, but that such acts, whether procedural or substantive, infringing or trenching upon the constitutional prerogatives of the courts, could not stand. * * * ” 227 La. at 171, 78 So.2d at 682.
To deny the defendant union, mover in the rule to dissolve, procedural relief would be an infringement of its constitutional rights and an encroachment upon the constitutional prerogatives of the court. LSA-Const. Art. 1, § 6, Art. 7, § 2.
Having concluded that the district court had the power to modify or revoke *814 the injunction, we turn to the question of whether or not any reason can be shown why it should be rescinded; The injunction is so drawn as to prohibit only acts which are unlawful. The plaintiffs opposition to the rule to rescind is based in part on the position that the defendants have alleged no right to the rescission and, in fact, cannot claim any right to engage in the acts enjoined, which are unlawful per se, since they cannot show irreparable injury by being forbidden to do that which is morally and legally wrong.
Plaintiff, respondent in rule, argues in its brief:
“ * * * If any party, permanently enjoined, upon allegation and proof that they have merely temporarily ceased their objectionable behavior, is thereby entitled to the dissolution of a permanent injunction, then there is no such thing as a final or permanent injunction, all injunctions being of a temporary nature during the immediate pendency of the objectionable conduct only. Such a result would lead to a multiplicity of actions as a party enjoined varied his conduct at his discretion from time to time.
“Suppose, pro arguendo, the injunction is dissolved and in April of 1966, when the present agreement expires, the same defendants behave unlawfully again, exactly as they have in each major strike, and are again permanently enjoined. Shall the court again be expected to dissolve the injunction between strikes and await the next episode * * * ad infinitum? It would seem that the simple compelling logic underlying a permanent injunction is that if the conduct enjoined is unlawful and produces irreparable injury, then the party enjoined has nó standing to urge his right to force the injured party to repeatedly suffer injury and the expense of litigation. * * >>
On its face, this argument appears to have some logic, but the question of the length of life of the injunction must be viewed in light of the requirements of the orderly and efficient administration of the court’s equity powers. The plaintiff has no vested right in the injunction. It is a continuing order, fashioned to meet a specific need, and when that need no longer exists, the injunction should be removed. 28 Am. Jur. Injunctions §§ 306, 307, 316 (1959). Thus if the defendant herein can show that because of changed conditions the injunction is no longer necessary, it should be revoked.
The foregoing argument of plaintiff, respondent in rule, addresses itself to the discretion of the trial judge after a hearing on the merits of the motion. The decree was originally ordered in his discretion and, since it is his order, any attempt to have it changed should be subjected to his further discretion. It is necessary, therefore, to remand this case for a hearing and a decision on the merits.
Defendants would have it appear that they have faithfully observed the injunction and that to continue it against them longer is not only unnecessary, but implies a sort of stigma of permanent guilt. However, we see in the record before us many serious charges of violation and rules for contempt, which were never adjudicated, having been dismissed as part of the strike settlement agreement. These are questions of fact which the trial judge may wish to consider in the further exexxise of his discretion.
For the reasons assigned, the judgment of the district court sustaining the exception of no cause of action is reversed and set aside, the exception is overruled, and the case remanded for further proceedings consistent with this opinion. Costs of this appeal are to be borne by the plaintiff, respondent in rule, all other costs to be assessed in accordance with final judgment.
Reversed and remanded.